# UNITED STATES DISTRICT COURT
## DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| WENDY MARFEO, individually and on behalf of all others similarly situated, | § § § | **CA 10 - 262** |
| Plaintiff, | § § | CASE NO. _____ |
| v. | § § § | **CLASS ACTION COMPLAINT** |
| FACEBOOK, INC. | § § § | |
| Defendant. | § § | **JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT

Plaintiff, Wendy Marfeo (hereafter "Marfeo" or "Plaintiff"), brings this action individually and on behalf of a nationwide class of all other persons similarly situated in the United States (hereafter "Class") against Facebook, Inc. (hereafter "Facebook" or "Defendant") for violations of the Stored Communications Act (hereafter "SCA"), 18 U.S.C. § 2701 *et seq*, breach of contract, breach of implied covenant of good faith and fair dealing, and unjust enrichment. Plaintiff seeks damages and equitable relief on her own behalf and on behalf of the Class to remedy violations of their privacy rights by Facebook's intentional and knowing transmission of users' personal information to third-party advertisers without the users' knowledge or consent in violation of Facebook's own Agreement with its users.

Plaintiff alleges the following upon personal knowledge as to her own acts, and upon information and belief based on the investigation conducted by Plaintiff's Counsel, as to all other matters:

## FACTUAL ALLEGATIONS

1.      Facebook is the largest social networking website service in the United

States with a website address found at http://www.facebook.com.

2.      Facebook is a social networking website that allows users to share personally

identifiable information, other information, and communications with other users and/or the

public.  Third-party advertisers also place advertisements on Facebook which users can click on.

3.      Users must first join Facebook by registering and agreeing to Facebook's Terms

and Privacy Policies, before they are able to post and share personal information on Facebook's

website.  Once registered, users may post personal information, including but not limited to,

name, address, phone number, email, gender, relationships, photographs, videos, and interests.

4.      Facebook promises in its "Statement of Rights and Responsibilities" (hereafter

"Terms") and in its Privacy Policies (collectively hereafter "Contract" or "Agreement") not to share

users' information with or send personally identifiable information to third-party advertisers.

However, despite these promises, Facebook shares such information.

5.      Section 10 of Facebook's Terms referred to as "About Advertisements on Facebook"

states that "We do not give your content or information to advertisers without your consent."[1]

6.      Section 5 of Facebook's Privacy Policy referred to as, "How We Use Your

Information," states, "We don't share your information with advertisers without your consent."[2]

7.      The advertisers section of Facebook's "Privacy Controls," states, "We never share

your personal information with our advertisers.  Facebook's ad targeting is done entirely

anonymously... Advertisers only receive anonymous data reports."[3]

---

[1] <http://www.facebook.com/terms.php> (last visited on June 16, 2010)
[2] <http://www.facebook.com/#!/policy.php> (last visited on June 16, 2010)
[3] <http://www.facebook.com/privacy/explanation.php> (last visited on June 16, 2010)

8.    Barry Schnitt, a director on Facebook's communication and public policy team, wrote in The Facebook Blog, dated April 5, 2010, "We don't share your information with advertisers unless you tell us to… Any assertion to the contrary is false. Period…we never provide the advertiser any names or other information about the people who are shown, or even who click on, the ads."[4]

9.    Despite all of the above contractual provisions and representations that Facebook does not share information with third-party advertisers, Facebook, in violation of its own Agreement and Privacy Policies, shared its users' personal information with third-party advertisers.  This violation was first articulated by Worcester Polytechnic Institute Computer Science Professor Craig E. Wills and AT&T Computer Scientist and Researcher Balachander Krishramurthy in an article published in August of 2009, entitled, "On the Leakage of Personally Identifiable Information Via Online Social Networks."[5]

10.    Wills' and Krishramurthy's article illustrates how online social networks, like Facebook, release personally identifiable information that alone or in combination with other publicly available information linkable to a specific individual can allow third-party advertisers to use the leaked personally identifiable information from the Facebook network alone or in combination with: (1) publicly available internet information that is linkable to a specific individual from outside of the Facebook network; and/or (2) information from tracking cookies to distinguish or trace a Facebook users' actual name and identity.

11.    Facebook embeds and sends a user's Facebook ID in the URL Referrer Header (which is like a website address that a user would use to navigate websites) when the user clicks on a third-party advertisement posted on Facebook's website.

---

[4] <http://blog.facebook.com/blog.php?post=379388037130> (last visited on June 16, 2010)
[5] <http://www2.research.att.com/~bala/papers/wosn09.pdf> (last visited on June 16, 2010)

12.     When the third-party advertiser receives the Facebook's user ID, embedded in the Referrer Header, that advertiser can then go back to the specific user's profile and obtain personally identifiable information, such as the user's real name, address, photos, and much more that the user has made publicly available either by choice or inadvertently by not changing Facebook's default privacy settings that makes much of the user's information publicly available.

13.     As a result when Facebook users click on an advertisement, the advertiser can determine the identity of the users and much more personal information from the users' profiles, all in violation of Facebook's Terms and Privacy Policies.

14.     Facebook has been on notice of its sharing of personal information with third-party advertisers since Wills' and Krishramurthy's article was released in August of 2009. Wendy Davis, of Media Post, reported in September 2009 in an article entitled, "Social Networks May 'Leak' Personally Identifiable Information," that Facebook "is investigating further to determine what changes, if any, it can make."[6]

15.     On May 21, 2010 the Wall Street Journal published an article entitled, "Facebook, MySpace Confront Privacy Loophole," by Emily Steel and Jessica E. Vascellaro, referring to the Wills and Krishnamurthy article and drew additional attention to the August 2009 article.[7]  The Wall Street Journal article confirms that the researchers had contacted Facebook about the leakage of personally identifiable information.

16.     Despite Facebook's awareness of its improper sharing of users' personal information with third-party advertisers from at least August of 2009, Facebook continued to

---

[6] <http://www.mediapost.com/publications/?fa=Articles.showArticle&art_aid=114344&passFuseAction=PublicationsSearch.showSearchReslts&art_searched=&page_number=0> (last visited on June 16, 2010)
[7] <http://online.wsj.com/article/SB10001424052748704513104575256701215465596.html?KEYWORDS=facebook> (last visited on June 16, 2010)

share such information with third-party advertisers.

## JURISDICTION AND VENUE

17.     This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. §§ 1332(a) and 1332(d), because the amount in controversy exceeds $5,000,000.00 exclusive of interests and costs, and more than two-thirds of the members of the putative class are citizens of states different from that of Defendant.

18.     Venue for this action properly lies in this District pursuant to 28 U.S.C. § 1391 as the named Plaintiff resides in this District and Defendant has engaged in the business in this District.

## PARTIES

19.     Plaintiff, Wendy Marfeo, is an individual who resides in North Providence, Rhode Island and is a user of Facebook's social networking website service and has clicked on at least one third-party advertisement appearing on Facebook's website.

20.     Defendant, Facebook, is a Delaware corporation headquartered at Palo Alto, California and does business in the State of Rhode Island and throughout the United States.

## CLASS ACTION ALLEGATIONS

21.     Plaintiff brings this action on behalf of herself and a Class of all other persons similarly situated pursuant to Fed. R. Civ. P. 23 as defined as follows:

> All Facebook users, who reside in the United States, whose user ID was embedded in the URL Referrer Header, and who clicked on a third-party advertisement displayed on Facebook's social networking website, anytime on or before May 21, 2010.

22.     Excluded from the Class are Defendant; any parent, subsidiary, or affiliate of Defendant or any employees, officers, or directors of Defendant; legal representatives, successors, or assigns of Defendant; and any justice, judge or magistrate judge of the United

States who may hear the case, and all persons related to any such judicial officer, as defined in 28 U.S.C. § 455(b).

23.   **Numerosity.**  The Class is so numerous and dispersed nationwide that joinder of all members is impracticable.  Upon information and belief, the Class numbers in the hundreds of thousands, if not millions.  The exact number of Class members is unknown, but can be determined from Defendant's computerized and other records.  Plaintiff reasonably estimates and believes that there are thousands of persons in the Class.

24.   **Commonality.**   There are numerous and substantial questions of law and fact that are common to all members of the Class, which questions predominate over any question affecting only individual Class members.  The members of the Class were and continue to be subjected to the same practices of the Defendant.  The common questions and principal common issues raised by Plaintiff's claims include: whether Defendant shared Plaintiff and the Class' personal information with third-party advertisers; whether Plaintiff consented to Defendant's sharing of Plaintiff's personal information with third-party advertisers; whether Defendant violated its own Terms and Privacy Policies by sharing of Plaintiff's personal information with third-party advertisers; whether Plaintiff and the Class have been damaged as a result of the Defendant's alleged violations as alleged herein; and if so the appropriate relief for Defendant's violations; whether Defendant has violated the SCA and if so the appropriate measure of damages and remedies against Defendant for any violations of the SCA; whether Defendant breached its contracts and if so the appropriate measure of damages and remedies against Defendant for such breach;  whether Defendant breached the covenant of good faith and fair dealing and if so the appropriate measure of damages and remedies against Defendant for such breach; whether Defendant has been unjustly enriched as a result of its unlawful conduct, and if

- 6 -

so whether Defendant should disgorge inequitably obtained money that it has been unjustly enriched by; and, the nature and extent of any other remedies, and injunctive relief, to which Plaintiff and the Class are entitled.

25. **Typicality.** Plaintiff's claims are typical of the claims of all of the other Class members, because her claims are based on the same legal and remedial theories as the claims of the Class and arise from the same course of conduct by Defendant.

26. **Adequacy.** Plaintiff will fairly and adequately protect the interest of all Class members in the prosecution of this Action and in the administration of all matters relating to the claims stated herein. Plaintiff is similarly situated with, and has suffered similar injuries as, the members of the Class she seeks to represent. Plaintiff has retained counsel experienced in handling class action lawsuits. Neither Plaintiff nor her counsel has any interest which might cause them not to vigorously pursue this action.

27. **Superiority.** A class action is superior to other available methods for the fair and efficient adjudication of the controversy, since individual joinder of the Class is impracticable. Even if individual Class members were able to afford individual litigation, it would be unduly burdensome to the Courts in which the individual litigation would proceed. Defendant has subjected the entire Class to the same violations as referenced herein. Accordingly, class certification is appropriate under Rule 23 because common issues of law and fact regarding Defendant's uniform violations predominate over individual issues, and class certification is a superior method of resolving these claims. No unusual difficulties are likely to be encountered in the management of this action as a class action. Defendant has acted and continues to act in a manner that is generally applicable to all members of the Class making final injunctive relief appropriate.

## CAUSES OF ACTION

## FIRST CAUSE OF ACTION

### (Stored Communications Act, 18 U.S.C. § 2701 *et seq.*)

28.     Plaintiff, on behalf of herself and the Class, hereby incorporates by reference the allegations contained in all of the preceding paragraphs of this complaint.

29.     Defendant Facebook provides an electronic communication service to the public via its social networking website service. 18 U.S.C. § 2510(15)

30.     A user's personally identifiable information, including its users' IDs, is an electronic communication within the meaning of 18 U.S.C. § 2510(12).

31.     Facebook holds its users' personally identifiable information, including its users' IDs, in electronic storage, 18 U.S.C. § 2510(17).

32.     Facebook provides remote computing service to the public because it provides computer storage and processing services by means of an electronic communications system. 18 U.S.C. § 2711(2).

33.     In relevant part, 18 U.S.C. § 2701(a)(1)-(2) of the SCA provides that an offense is committed by anyone who: (1) intentionally accesses without authorization a facility through which electronic communication service is provided; or (2) intentionally exceeds an authorization to access that facility; and thereby obtains…[an] electronic communication while it is in electronic storage in such system.

34.     Facebook intentionally exceeded its authorization to access and control confidential and private information relating to Plaintiff and the Class' electronic communications in violation of 18 U.S.C. § 2701 *et seq* of the SCA.

35.     Facebook knowingly, willfully, unlawfully and intentionally without

authorization accessed confidential and private information relating to Plaintiff and the Class' electronic communications in violation of 18 U.S.C. § 2701 *et seq* of the SCA.

36.    In relevant part, 18 U.S.C. § 2702(a)(1)-(2) of the SCA provides that a person or entity shall not: (1)...knowingly divulge to any person or entity the contents of a communication while in electronic storage by that service; and (2)...shall not knowingly divulge to any person or entity the contents of any communication which is carried or maintained on that service.

37.    By embedding its users' IDs in the Referrer Header and sharing personally identifiable information with third-party advertisers, Defendant knowingly divulges the contents of communications while those communications are in electronic storage, in violation of 18 U.S.C. § 2702(a)(1), and knowingly divulges the contents of communications that are carried and maintained by Facebook in violation of 18 U.S.C. § 2702(a)(2).

38.    Facebook carries and maintains its users' personally identifiable information, including its users' IDs, solely for the purpose of providing storage and computer processing services to its users. Facebook is not authorized to access this information for purposes other than providing storage and computer processing. 18 U.S.C § 2702(a)(2).

39.    Facebook engages in the foregoing acts without obtaining the lawful consent of its users 18 U.S.C. § 2702(b)(3).

40.    Section 2707 of the SCA provides for a civil cause of action and allows for damages, declaratory and equitable relief.

41.    Plaintiff and the Class are entitled to statutory damages of no less than $1,000.00 (one thousand dollars) per violation. Because Facebook's violations were willful and intentional, Plaintiff and the Class are entitled to recover punitive damages as provided

by 18 U.S.C. § 2702(c).

## SECOND CAUSE OF ACTION

### (Breach of Contract)

42.     Plaintiff, on behalf of herself and the Class, hereby incorporates by reference the allegations contained in all of the preceding paragraphs of this complaint.

43.     Defendant Facebook requires Plaintiff and the Class to register only after agreeing to Facebook's Terms and Privacy Policies.   The agreed upon Terms and Privacy Policies constitute a valid and enforceable contract between Facebook and its users.   Plaintiff and the Class submit personally identifiable information to Facebook and Facebook's contract promises Facebook would not share this information with third-party advertisers without the Plaintiff's and the Class' consent.

44.     Facebook states in its Terms and Privacy Policies that it will use only non-personally identifiable attributes it has collected and that its advertisement targeting is done entirely anonymously.   Despite these promises, Facebook did in fact knowingly share users' personally identifiable attributes and non-anonymous user information with third-party advertisers in violation of its own Agreement with its users.

45.     Plaintiff and the Class never consented to the sharing of their personally identifiable information to third-party advertisers.

46.     Plaintiff and the Class have performed their obligations under the contract.

47.     Facebook materially breached its contractual obligations through its conduct as alleged herein, including its transmission of Plaintiff's and the Class' personal information to third-party advertisers including the Plaintiff's and the Class' user IDs without consent.

48.     Plaintiff and the Class have been damaged as a direct and proximate result of

Facebook's breach of their Agreement with Plaintiff and the Class. Plaintiff and the Class have been damaged in an amount to be proven at trial.

**(THIRD CAUSE OF ACTION)**

**(Breach of Implied Covenant of Good Faith and Fair Dealing)**

49.     Plaintiff, on behalf of herself and the Class, hereby incorporates by reference the allegations contained in all of the preceding paragraphs of this complaint.

50.     Once Plaintiff and the Class agreed to use Facebook's social networking website, they agreed to Defendant Facebook's Contract, its Terms and Privacy Policies, and as a result are in an enforceable contract.

51.     A covenant of good faith and fair dealing, which imposes upon each party to a contract a duty of good faith and fair dealing in its performance, is implied in every contract, including the Agreement that embodies the relationship between Facebook and its users.

52.     Good faith and fair dealing is an element imposed by common law or statute as an element of every contract under the laws of every state. Under the covenant of good faith and fair dealing, both parties to a contract impliedly promise not to violate the spirit of the bargain and not to intentionally do anything to injure the other party's right to receive the benefits of the contract.

53.     Plaintiff and the Class reasonably rely upon Facebook to act in good faith both with regard to the terms of the Agreement and in the methods and manner in which it carries out those terms. Bad faith can violate the spirit of the Agreement and may be overt or may consist of inaction. Facebook's inaction in failing to adequately notify Plaintiff and the Class of the release of personal information to third-party advertisers evidences bad faith and ill motive.

- 11 -

54.     The Agreement is a form contract, the terms of which Plaintiff and the Class are deemed to have accepted once Plaintiff and the Class sign up with Facebook. The Agreement purports to give contractual discretion to Facebook relating to Facebook's protection of users' privacy. Facebook is subject to an obligation to exercise that discretion in good faith. The covenant of good faith and fair dealing is breached when a party to a contract uses discretion conferred by the contract to act dishonestly or to act outside of accepted commercial practices. Facebook breached its implied covenant of good faith and fair dealing by exercising bad faith in using its discretionary rights to deliberately, routinely, and systematically make users' personal information available to third-party advertisers.

55.     Plaintiff and the Class have performed all, or substantially all, of the obligations imposed on them under the Agreement, whereas Facebook has acted in a manner as to evade the spirit of the Agreement, in particular by deliberately, routinely, and systematically without notifying Plaintiff and the Class of its disclosure of users' personal information to third-party advertisers. Such actions represent a fundamental wrong that is clearly beyond the reasonable expectations of the parties. Facebook's disclosure of such information to third-party advertisers is not in accordance with the reasonable expectations of the parties and evidences a dishonest purpose.

56.     Facebook's ill motive is further evidenced by its lack of obtaining users' consent in its data mining efforts while at the same time consciously and deliberately utilizing data mining to automatically and without notice provide user information to third party advertisers. Facebook profits from advertising revenues derived from its data mining efforts from Plaintiff and the Class.

57.     The obligation imposed by the implied covenant of good faith and fair dealing is an obligation to refrain from opportunistic behavior.  Facebook has breached the implied covenant of good faith and fair dealing in the Agreement through its policies and practices as alleged herein.  Plaintiff and the Class have sustained damages and seek a determination that the policies and procedures of Facebook are not consonant with Facebook's implied duties of good faith and fair dealing.

### (FOURTH CAUSE OF ACTION)

### (Unjust Enrichment)

58.     Plaintiff, on behalf of herself and the Class, hereby incorporates by reference the allegations contained in all of the preceding paragraphs of this complaint.

59.     By engaging in the conduct described in this Complaint, Defendant has knowingly obtained benefits from Plaintiff and the Class under circumstances such that it would be inequitable and unjust for Defendant to retain them.

60.     Defendant has received a benefit from Plaintiff and the Class and Defendant has received and retained money from advertisers as a result of sharing users' personal information with those advertisers without Plaintiff's and the Class' knowledge or consent as alleged in this Complaint.

61.     Plaintiff and the Class did not expect that Defendant would use their personal information without their consent to earn money from third-party advertisers.

62.     Defendant did knowingly use Plaintiff's and the Class' personal information without their knowledge or consent to earn money from third-party advertisers and has full knowledge of the benefit it has received from Plaintiff and the Class.  If Plaintiff and the Class

had known the Defendant was sharing their personal information with third-party advertisers, they would not have consented and Defendant would not have made money from the advertisers.

63.     Defendant will be unjustly enriched if Defendant is permitted to retain the money paid to it by the advertisers.

64.     Defendant Facebook should be required to provide restitution of all money obtained from its unlawful conduct.

65.     Plaintiff and the Class are entitled to an award of compensatory and punitive damages in an amount to be determined at trial or to the imposition of a constructive trust upon the wrongful profit obtained by, revenues obtained by, and benefits conferred upon them as a result of their wrongful actions as alleged in this Complaint.

66.     Plaintiff and the Class have no remedy at law to prevent Defendant from continuing the inequitable conduct alleged in this Complaint and the continued unjust retention of the money Defendant received from third party advertisers.

### REQUEST FOR RELIEF

WHEREFORE, Plaintiff, Wendy Marfeo, on behalf of herself and the Class, request the following relief:

1.     An order certifying that this action is properly brought and may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, that Plaintiff be appointed as Class Representative, and that Plaintiff's counsel be appointed Class Counsel;

2.     An award of damages;

3.     Restitution of all monies unjustly obtained or to be obtained from Plaintiff and members of the Class;

4.     Declaratory and injunctive relief;

- 14 -

5.      An award of reasonable attorneys' fees and costs;

6.      Such other relief at law or equity as this court may deem just and proper.


DATED: June 17, 2010.


Peter N. Wasylyk (RI Bar # 3351)
LAW OFFICES OF PETER N. WASYLYK
1307 Chalkstone Avenue
Providence, Rhode Island 02908
401-831-7730 (telephone)
401-861-6064 (facsimile)
E-Mail:pnwlaw@aol.com


Additional Counsel for Plaintiff:


Andrew S. Kierstead
LAW OFFICE OF ANDREW KIERSTEAD
1001 SW 5th Avenue, Suite 1100
Portland, Oregon 97204
508-224-6246 (telephone)
508-224-4356 (facsimile)