UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| WENDY MARFEO, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>FACEBOOK, INC.<br><br>Defendant. | § § § § § § § § § § § § § CASE NO. 10-262<br><br>**FIRST AMENDED<br>CLASS ACTION COMPLAINT**<br><br><br><br>**JURY TRIAL DEMANDED** |

### FIRST AMENDED
### CLASS ACTION COMPLAINT

Plaintiff, Wendy Marfeo (hereafter "Marfeo" or "Plaintiff"), brings this action individually and on behalf of two nationwide Classes of all other persons similarly situated in the United States (hereafter "Classes") against Facebook, Inc. (hereafter "Facebook" or "Defendant") for violations of the Stored Communications Act (hereafter "SCA"), 18 U.S.C. § 2701 *et seq*, breach of contract, breach of implied covenant of good faith and fair dealing, and unjust enrichment. Plaintiff seeks damages and equitable relief on her own behalf and on behalf of two Classes to remedy violations of their privacy rights by Facebook's intentional and knowing transmission of users' personal information to third-party advertisers and internet tracking companies without the users' knowledge or consent in violation of Facebook's own Agreements and Privacy Policies with its users.

Plaintiff alleges the following upon personal knowledge as to her own acts, and upon information and belief based on the investigation conducted by Plaintiff's Counsel, as to all other

matters:

## FACTUAL ALLEGATIONS

1. Facebook is the largest social networking website service in the United States with a website address found at http://www.facebook.com.

2. Facebook is a social networking website that allows users to share personally identifiable information, other information, and communications with other users and/or the public.

3. Users must first join Facebook by registering and agreeing to Facebook's Terms and Privacy Policies, before they are able to post and share personal information on Facebook's website. Once registered, users may post personal information, including but not limited to, name, address, phone number, email, gender, relationships, photographs, videos, and interests.

4. Once registered, users can participate in thousands of interactive Facebook authorized Applications which are pieces of software that let Facebook's users play games or share common interests with one another (hereafter "Applications" or "Apps"), such as Zynga's Game Network Inc's FarmVille.

5. Facebook promises in its "Statement of Rights and Responsibilities" (hereafter "Terms") and in its Privacy Policies not to share users' information with or send personally identifiable information to third-party advertisers and internet tracking companies. However, despite these promises, Facebook shares such information.

6. Section 10 of Facebook's Terms referred to as "About Advertisements on Facebook" states that "We do not give your content or information to advertisers without your consent."[1]

7. Section 5 of Facebook's Privacy Policy referred to as, "How We Use Your

---

[1] <http://www.facebook.com/terms.php> (last visited on October 18, 2010)

Information," states, "We don't share your information with advertisers without your consent."[2]

8. The advertisers section of Facebook's "Privacy Controls," states, "We never share personal information with our advertisers… Facebook's ad targeting is done entirely anonymously… Advertisers only receive anonymous data reports."[3]

9. Barry Schnitt, a director on Facebook's communication and public policy team, wrote in The Facebook Blog, dated April 5, 2010, "We don't share your information with advertisers unless you tell us to… Any assertion to the contrary is false. Period…we never provide the advertiser any names or other information about the people who are shown, or even who click on, the ads."[4]

10. Despite all of the above contractual provisions and representations that Facebook does not share information with third-party advertisers, Facebook, in violation of its own agreement and privacy policies, shared its users personal information with the third-party advertisers and internet tracking companies.

11. As a result when Facebook users interact with Facebook's authorized Applications, third-party advertisers and internet tracking companies can determine the identity of the users and much more personal information from the users' profiles, all in violation of Facebook's Terms and Privacy Policies.

12. On October 18, 2010 the Wall Street Journal published an article entitled, "Facebook in Privacy Breach," by Emily Steel and Geoffrey A. Fowler.[5]  The Wall Street Journal article discusses the Journal's investigation into the transmitting of Facebook users'

---

[2] <http://www.facebook.com/#!/policy.php> (last visited on October 18, 2010)
[3] <http://www.facebook.com/privacy/explanation.php> (last visited on October 18, 2010)
[4] <http://blog.facebook.com/blog.php?post=379388037130> (last visited on June 16, 2010)
[5] <http://online.wsj.com/article/SB10001424052702304772804575558484075236968.html?mod=what_they_know
> (last visited on October 18, 2010)

identifying information. On information and belief millions of Facebook users in the United States who regularly interact with Facebook's authorized Apps have had their personal information shared with third-party advertisers and internet tracking companies.

## JURISDICTION AND VENUE

13. This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. §§ 1332 (a) and 1332 (d), because the amount in controversy exceeds $5,000,000.00 exclusive of interests and costs, and more than two-thirds of the members of the putative classes are citizens of states different from that of Defendant.

14. Venue for this action properly lies in this District pursuant to 28 U.S.C. § 1391 as the named Plaintiff resides in this District and Defendant has engaged in the business in this District.

## PARTIES

15. Plaintiff, Wendy Marfeo, is an individual who resides in North Providence, Rhode Island and is a user of Facebook's social networking website service and has clicked on at least one third-party advertisement appearing on Facebook's website and has interacted with Facebook's authorized Apps, including Zynga Game Network Inc's Farmville, on Facebook's website.

16. Defendant, Facebook, is a Delaware corporation headquartered at Palo Alto, California and does business in the State of Rhode Island and throughout the United States.

## CLASS ACTION ALLEGATIONS

17. Plaintiff brings this action on behalf of herself and two Classes of all other persons similarly situated pursuant to Fed. R. Civ. P. 23 as defined as follows:

>  Class I: All Facebook users, who reside in the United States, who interacted with Facebook's authorized Applications on

    Facebook's social networking website, and, as a result of such interactions had their user's ID transmitted to third-party advertisers and/or internet tracking companies.

    <u>Class II</u>: All Facebook users, who reside in the United States, whose user ID was embedded in the URL Referer Header, and who clicked on a third-party advertisement displayed on Facebook's social networking website, anytime on or before May 21, 2010.

18. Excluded from the Classes are Defendant; any parent, subsidiary, or affiliate of Defendant or any employees, officers, or directors of Defendant; legal representatives, successors, or assigns of Defendant; and any justice, judge or magistrate judge of the United States who may hear the case, and all persons related to any such judicial officer, as defined in 28 U.S.C. § 455(b).

19. **<u>Numerosity</u>.** The Classes are so numerous and dispersed nationwide that joinder of all members is impracticable.  Upon information and belief, members of each Class number in the hundreds of thousands, if not millions.  The exact number of Class members of each Class is unknown, but can be determined from Defendant's computerized and other records.  Plaintiff reasonably estimates and believes that there are thousands of persons in each of the Classes.

20. **<u>Commonality.</u>** There are numerous and substantial questions of law and fact that are common to all members of the Classes, which questions predominate over any question affecting only individual Class members.  The members of the Classes were and continue to be subjected to the same practices of the Defendant.  The common questions and principal common issues raised by Plaintiff's claims include: whether Defendant shared Plaintiff and the Class' personal information with third-party advertisers and internet tracking companies; whether Plaintiff consented to Defendant's sharing of Plaintiff's personal information with third-party advertisers and internet tracking companies; whether Defendant violated its own Terms and Privacy Policies by sharing of Plaintiff's personal information with third-party advertisers and

internet tracking companies; whether Plaintiff and the Classes have been damaged as a result of the Defendant's alleged violations as alleged herein; and if so the appropriate relief for Defendant's violations; whether Defendant has violated the SCA and if so the appropriate measure of damages and remedies against Defendant for any violations of the SCA; whether Defendant breached its contracts and if so the appropriate measure of damages and remedies against Defendant for such breach;  whether Defendant breached the covenant of good faith and fair dealing and if so the appropriate measure of damages and remedies against Defendant for such breach; whether Defendant has been unjustly enriched as a result of its unlawful conduct, and if so whether Defendant should disgorge inequitably obtained money that it has been unjustly enriched by; and, the nature and extent of any other remedies, and injunctive relief, to which Plaintiff and the Classes are entitled.

21. **Typicality.** Plaintiff's claims are typical of the claims of all of the other members of each Class, because her claims are based on the same legal and remedial theories as the claims of the Classes and arise from the same course of conduct by Defendant.

22. **Adequacy.** Plaintiff will fairly and adequately protect the interest of all members of each class in the prosecution of this Action and in the administration of all matters relating to the claims stated herein.  Plaintiff is similarly situated with, and has suffered similar injuries as, the members of each Class she seeks to represent.  Plaintiff has retained counsel experienced in handling class action lawsuits.  Neither Plaintiff nor her counsel has any interest which might cause them not to vigorously pursue this action.

23. **Superiority.** A class action is superior to other available methods for the fair and efficient adjudication of the controversy, since individual joinder of the Classes is impracticable. Even if individual Class members were able to afford individual litigation, it would be unduly

burdensome to the Courts in which the individual litigation would proceed. Defendant has subjected the Classes to the same violations as referenced herein. Accordingly, class certification is appropriate under Rule 23 because common issues of law and fact regarding Defendant's uniform violations predominate over individual issues, and class certification is a superior method of resolving these claims. No unusual difficulties are likely to be encountered in the management of this action as a class action. The Defendant has acted and continues to act in a manner that is generally applicable to all members of the Classes making final injunctive relief appropriate.

## CAUSES OF ACTION

## FIRST CAUSE OF ACTION

(Stored Communications Act, 18 U.S.C. § 2701 *et seq.*)

24. Plaintiff, on behalf of herself and the Classes, hereby incorporates by reference the allegations contained in all of the preceding paragraphs of this complaint.

25. Defendant Facebook provides an electronic communication service to the public via its social networking website service. 18 U.S.C. § 2510 (15)

26. Facebook provides remote computing service to the public because it provides computer storage and processing services by means of an electronic communications system. 18 U.S.C. § 2711(2).

27. Facebook carries and maintains its users' Profile information solely for the purpose of providing storage and computer processing services to its users. Facebook is not authorized to access this information for purposes other than providing storage and computer processing. 18 U.S.C § 2702(a) (2).

28. A user's Facebook Profile is an electronic communication with the meaning of

18 U.S.C. § 2510 (12).

29. Facebook holds its users' Facebook Profiles in electronic storage, 18 U.S.C. § 2510 (17).

30. In relevant part, 18 U.S.C. § 2701(a)(1)-(2) of the SCA provides that an offense is committed by anyone who: (1) intentionally accesses without authorization a facility through which electronic communication service is provided; or (2) intentionally exceeds an authorization to access that facility; and thereby obtains…[an] electronic communication while it is in electronic storage in such system.

31. Facebook intentionally exceeded its authorization to access and control confidential and private information relating to Plaintiff and the Class' electronic communications in violation of 18 U.S.C. § 2701 *et seq* of the SCA.

32. In relevant part, 18 U.S.C. § 2702(a) (1)-(2) of the SCA provides that a person or entity shall not: (1)…knowingly divulge to any person or entity the contents of a communication…; and (2)…shall not knowingly divulge to any person or entity the contents of any communication…

33. Section 2707 of the SCA provides for a civil cause of action and allows for damages, declaratory and equitable relief.

34. Facebook knowingly, willfully, unlawfully and intentionally without authorization divulged confidential and private information relating to Plaintiff and the Class' electronic communications in violation of 18 U.S.C. § 2701 *et seq* of the SCA.

35. Facebook engages in the foregoing acts without obtaining the lawful consent of the user. 18 U.S.C. § 2702 (b) (3).

36. By engaging in the foregoing acts, Facebook knowingly divulges the contents

of communication carried and maintained by Facebook on behalf of and received by transmissions from Facebook users in violation of 18 U.S.C. § 2702(a)(2).

37.     Plaintiff and the Classes are entitled to statutory damages of no less than $1,000.00 (one thousand dollars) per violation.  Because Facebook's violations were willful and intentional, Plaintiff and the Classes are entitled to recover punitive damages as provided by 18 U.S.C. § 2702 (c).

## SECOND CAUSE OF ACTION

**(Breach of Contract)**

38.     Plaintiff, on behalf of herself and the Classes, hereby incorporates by reference the allegations contained in all of the preceding paragraphs of this complaint.

39.     Defendant Facebook requires Plaintiff and the Classes to register only after agreeing to Facebook's Terms and Privacy Policies.  The agreed upon Terms and Privacy Policies constitute a valid and enforceable contract between Facebook and its users.  Plaintiff and the Classes submit personally identifiable information to Facebook and Facebook's contract promises Facebook would not share this information with third-party advertisers without the Plaintiff's consent and the consent of each Class.

40.     Facebook states in its Terms and Privacy Policies that it will use only non-personally identifiable attributes it has collected and that its advertisement targeting is done entirely anonymously.  Despite these promises, Facebook did in fact knowingly share users' personally identifiable attributes and non-anonymous user information with third-party advertisers in violation of its own Agreement with its users.

41.     Plaintiff and the Classes never consented to the sharing of their personally identifiable information to third-party advertisers and tracking companies.

42. Plaintiff and the Classes have performed their obligations under the contract.

43. Facebook materially breached its contractual obligations through its conduct as alleged herein, including its transmission of Plaintiff's and the Class' personal information to third-party advertisers and tracking companies including the Plaintiff's and the Class' user IDs without consent.

44. Plaintiff and the Classes have been damaged as a direct and proximate result of Facebook's breach of their agreement with Plaintiff and the Classes. Plaintiff and the Classes have been damaged in an amount to be proven at trial.

### (THIRD CAUSE OF ACTION)

### (Breach of Implied Covenant of Good Faith and Fair Dealing)

45. Plaintiff, on behalf of herself and the Classes, hereby incorporates by reference the allegations contained in all of the preceding paragraphs of this complaint.

46. Once Plaintiff and the Classes agreed to use Facebook's social networking website, they agreed to Defendant Facebook's contract, its Terms and Privacy Policies, and as a result are in an enforceable contract.

47. A covenant of good faith and fair dealing, which imposes upon each party to a contract a duty of good faith and fair dealing in its performance, is implied in every contract, including the Agreement that embodies the relationship between Facebook and its users.

48. Good faith and fair dealing is an element imposed by common law or statute as an element of every contract under the laws of every state. Under the covenant of good faith and fair dealing, both parties to a contract impliedly promise not to violate the spirit of the bargain and not to intentionally do anything to injure the other party's right to receive the benefits of the contract.

49. Plaintiff and the Classes reasonably rely upon Facebook to act in good faith both with regard to the terms of the Agreement and in the methods and manner in which it carries out those terms. Bad faith can violate the spirit of the Agreement and may be overt or may consist of inaction. Facebook's inaction in failing to adequately notify Plaintiff and the Classes of the release of personal information to third party advertisers evidences bad faith and ill motive.

50. The Agreement is a form contract, the terms of which Plaintiff and the Classes are deemed to have accepted once Plaintiff and the Classes sign up with Facebook. The Agreement purports to give contractual discretion to Facebook relating to Facebook's protection of users' privacy. Facebook is subject to an obligation to exercise that discretion in good faith. The covenant of good faith and fair dealing is breached when a party to a contract uses discretion conferred by the contract to act dishonestly or to act outside of accepted commercial practices. Facebook breached its implied covenant of good faith and fair dealing by exercising bad faith in using its discretionary rights to deliberately, routinely, and systematically make users' personal information available to third-party advertisers and tracking companies.

51. Plaintiff and the Classes have performed all, or substantially all, of the obligations imposed on them under the Agreement, whereas Facebook has acted in a manner as to evade the spirit of the Agreement, in particular by deliberately, routinely, and systematically without notifying Plaintiff and the Classes of its disclosure of users personal information to third-party advertisers. Such actions represent a fundamental wrong that is clearly beyond the reasonable expectations of the parties. Facebook's disclosure of such information to third party advertisers and tracking companies is not in accordance with the reasonable expectations of the parties and evidences a dishonest purpose.

52. Facebook's ill motive is further evidenced by its lack of obtaining users' consent in its data mining efforts while at the same time consciously and deliberately utilizing data mining to automatically and without notice provide user information to third party advertisers and tracking companies. Facebook profits from advertising revenues derived from its data mining efforts from Plaintiff and the Classes.

53. The obligation imposed by the implied covenant of good faith and fair dealing is an obligation to refrain from opportunistic behavior. Facebook has breached the implied covenant of good faith and fair dealing in the Agreement through its policies and practices as alleged herein. Plaintiff and the Class have sustained damages and seek a determination that the policies and procedures of Facebook are not consonant with Facebook's implied duties of good faith and fair dealing.

**(FOURTH CAUSE OF ACTION)**

**(Unjust Enrichment-In the Alternative)**

54. Plaintiff, on behalf of herself and the Classes, hereby incorporates by reference the allegations contained in all of the preceding paragraphs of this complaint.

55. By engaging in the conduct described in this Complaint, Defendant has knowingly obtained benefits from Plaintiff and the Classes under circumstances such that it would be inequitable and unjust for Defendant to retain them.

56. Defendant has received a benefit from Plaintiff and the Classes and Defendant has received and retained money from advertisers as a result of sharing Defendant's users' personal information with those advertisers without Plaintiff and the Class' knowledge or consent as alleged in this Complaint.

57. Plaintiff and the Classes did not expect that Defendant would use their personal information without their consent to earn money from third-party advertisers.

58. Defendant did knowingly use Plaintiff and the Classes' personal information without their knowledge or consent to earn money from third-party advertisers and has full knowledge of the benefit it has received from Plaintiff and the Classes. If Plaintiff and the Class had known the Defendant was not keeping their personal information from advertisers, they would not have consented and Defendant would not have made money from the advertisers.

59. Defendant will be unjustly enriched if Defendant is permitted to retain the money paid to it by the advertisers.

60. Defendant Facebook should be required to provide restitution of all money obtained from its unlawful conduct.

61. Plaintiff and the Classes are entitled to an award of compensatory and punitive damages in an amount to be determined at trial or to the imposition of a constructive trust upon the wrongful profit obtained by, revenues obtained by and benefits conferred upon them as a result of their wrongful actions as alleged in this Complaint.

62. Plaintiff and the Classes have no remedy at law to prevent Defendant from continuing the inequitable conduct alleged in this Complaint and the continued unjust retention of the money Defendant received from third party advertisers.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff, Wendy Marfeo, on behalf of herself and the Classes, request the following relief:

1. An order certifying that this action is properly brought and may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, that Plaintiff be appointed

as Class Representative, and that Plaintiff's counsel be appointed Class Counsel;

    2.    An award of damages;

    3.    Restitution of all monies unjustly obtained or to be obtained from Plaintiff and members of the Classes;

    4.    Declaratory and injunctive relief;

    5.    An award of reasonable attorneys' fees and costs;

    6.    Such other relief at law or equity as this court may deem just and proper.

DATED: October 18, 2010.

/s/ Peter N. Wasylyk
Peter N. Wasylyk (RI Bar # 3351)
LAW OFFICES OF PETER N. WASYLYK
1307 Chalkstone Avenue
Providence, Rhode Island 02908
401-831-7730 (telephone)
401-861-6064 (facsimile)
E-Mail:pnwlaw@aol.com

Additional Counsel for Plaintiff:

                                      Andrew S. Kierstead
                                      LAW OFFICE OF ANDREW KIERSTEAD
                                      1001 SW 5th Avenue, Suite 1100
                                      Portland, OR  97204
                                      508.224.6246 (telephone)
                                      508.224.4356 (facsimile)

                                      Marc R. Stanley
                                      Martin Woodward
                                      STANLEY • IOLA, LLP
                                      3100 Monticello Avenue, Suite 750
                                      Dallas, TX  75205
                                      214.443.4300 (telephone)
                                      214.443.0358 (facsimile)

                                      *Counsel for Plaintiff*